Unsealed per Mag Judge Sharp as of 11:15 a.m. on 2/7/08



FILED NOV 26 2007 IN THIS OFFICE CLERK U.S. DISTRICT COURT GREENSBORO, NC BY

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:07CR412-1 |
| | : | |
| MARKO RUDI | : | |

The Grand Jury charges:

COUNT ONE

1. At all times herein material, the United States Agency for International Development ("USAID") was an independent federal agency responsible for assisting nations recovering from disaster, confronting poverty, and engaging in democratic reforms, in order to promote long-term, equitable economic growth and to advance the foreign policy objectives of the United States by supporting agricultural development, global health, and conflict prevention.

2. At all times herein material, Research Triangle Institute International, Inc. ("RTI") was an organization based in the County of Durham, in the Middle District of North Carolina, that, since 1988, had received approximately 250 contracts, grants, or other awards from USAID with a total value of around $1,000,000,000, including benefits in excess of $10,000 under a federal program involving a grant, contract, or other form of federal assistance during each of the years 2003, 2004, and 2005.

3. From in and around October 2000, through on or about August 19, 2005, MARKO RUDI was an agent of RTI, that is, an

employee whose duties included matters related to accounting and finance, based in the County of Durham, in the Middle District of North Carolina. The "Contract of Employment" MARKO RUDI signed with RTI on October 23, 2000, included a "Conflict of Interest" provision requiring MARKO RUDI to offer his services "exclusively to [RTI]" and declaring that, "in order to prevent any possible conflict, [MARKO RUDI] agree[d] to disclose all potential conflicts of interest during [his] employment with RTI, and to obtain written approval of the President [of RTI] prior to engaging in the performance of outside employment activities requiring the application of scientific or technical knowledge, training experience, or talent, or in any other capacity which could conflict with the interests of [RTI]." In addition, MARKO RUDI agreed to "faithfully abide by [RTI's] policies," including Policy Number 1115, which provides that, in dealing with persons with whom RTI does business, RTI employees may not accept gifts of cash, may not accept in-kind gifts worth more than $150 (unless local custom makes refusal awkward whereupon the gift must be forwarded to RTI), requires disclosure of potential conflicts of interest arising from personal relationships between RTI employees and persons affiliated with companies that contract with RTI, and prohibits RTI employees from engaging in business activities "within the course, scope, and field of [the employees'] RTI responsibilities and/or discipline or area," without prior permission from RTI.

2

Case 1:07-cr-00412-UA *SEALED* Document 1 Filed 11/26/2007 Page 2 of 11
Case 1:07-cr-00412-NCT Document 3 Filed 02/07/08 Page 2 of 11

4. At all times herein material, SMitTeq LLC was a human resources outsourcing firm.

5. At all times herein material, Houssam Hatoum operated Business Systems House FZ-LLC ("BSH"), a firm based in Dubai, United Arab Emirates, that, among other things, provided computer software services used in human resource and payroll management.

6. On or about April 11, 2003, the United States, in a procurement of services, awarded RTI a cost-reimbursable USAID contract for services in Iraq, known as the Local Governance Project (the "LGP contract"), with a value in excess of $1,000,000. The LGP contract's scope of work called, among other things, for RTI to strengthen the abilities of individuals and civil society organizations in Iraq to participate in local governance processes, with an emphasis on enhancing the roles of women, youth and previously excluded groups, and simultaneously to reinforce stability in Iraq by improving local governments' ability effectively and efficiently to deliver essential daily services and to manage resources and staff. The LGP contract awarded RTI a fixed fee and provided for reimbursement of its "allowable costs." The initial total estimated cost for the performance of the LGP contract, excluding fee, was $155,821,580. The fee, contracted at 8.5 percent, originally amounted to $12,151,436. By December 1, 2005, RTI had received $239,300,000 from USAID for the LGP contract (due to options within and extensions of the original agreement).

3

Soon after RTI won the LGP contract, MARKO RUDI assumed responsibility for developing and supervising RTI's accounting and finance functions in Iraq.

7. From in and around April 2003, through on or about August 19, 2005, the exact dates to the Grand Jurors unknown, in the County of Durham, in the Middle District of North Carolina, and elsewhere, MARKO RUDI and divers other persons, known and unknown to the Grand Jurors, devised and intended to devise a scheme and artifice to defraud the United States and RTI (including by depriving RTI of the intangible right of honest services) and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, in connection with the LGP contract, including by fraudulently concealing and causing the concealment of material information regarding MARKO RUDI's dealings with BSH and related parties.

## SCHEME AND ARTIFICE

8. It was a part of the scheme and artifice that, in and around April 2003, MARKO RUDI would and did arrange for SMitTeq LLC and BSH to begin doing work for RTI, including drafting a Request for Proposals ("RFP") seeking a subcontractor to perform human resources and payroll work for the LGP contract.

9. It was a further part of the scheme and artifice that, on May 10, 2003, without RTI's knowledge or authorization, MARKO RUDI and Hatoum would and did enter into two agreements between RTI and

4

BSH, the Outsourcing Services Agreement ("OSA") and the General Software Licensing and Services Agreement ("GSLSA"), for the procurement of property and services as a subcontractor and supplier on the LGP contract, with a value in excess of $1,000,000.

10. It was a further part of the scheme and artifice that MARKO RUDI thereafter would and did approve and direct the approval of payments totaling $7,232,866 from RTI to BSH for invoices issued pursuant to the OSA and GSLSA, which payments included approximately $500,000 in "termination payments" supposedly due to BSH when employees hired to work under the OSA were terminated (despite the fact that the OSA did not provide for any such payments), $325,280 for a software system that RTI never received, and $250,000 in additional overbilling.

11. It was a further part of the scheme and artifice that, on May 17, 2003, MARKO RUDI would and did issue and cause the issuance of the RFP (seeking a human resources/payroll subcontractor for the LGP contract) that SMitTeq LLC and BSH had drafted.

12. It was a further part of the scheme and artifice that, after BSH and SMitTeq LLC submitted a subcontract proposal responsive to the RFP (that BSH and SMitTeq LLC previously had prepared at MARKO RUDI's direction), MARKO RUDI would and did participate in and influence the process that led to the award of the subcontract to BSH (with SMitTeq LLC as an approved lower-tier subcontractor), in an agreement codified in a Master Services

5

Case 1:07-cr-00412-UA *SEALED*   Document 1   Filed 11/26/2007   Page 5 of 11
Case 1:07-cr-00412-NCT   Document 3   Filed 02/07/08   Page 5 of 11

Agreement ("MSA"), a procurement of human resources and payroll services as a subcontractor and supplier on the LGP, with a value in excess of $1,000,000, including a $705,000 implementation fee, as well as a monthly recurring fee throughout the life of the MSA.

13. It was further a part of the scheme and artifice that, through his position at RTI, MARKO RUDI would and did continue to participate in matters related to the MSA, including RTI's payments to BSH of over $6,000,000 (in addition to nearly $12,000,000 in Iraqi employee payroll costs), as of June 2005.

14. It was a further part of the scheme and artifice that MARKO RUDI would and did cause the transfer hundreds of thousands of dollars from BSH and parties connected to BSH for the purchase of and for significant improvements to 7 Birnham Lane, Durham, North Carolina, as well as for the purchase and furnishing of two condominiums in Miami, Florida, all for MARKO RUDI's benefit, after MARKO RUDI awarded and participated in the awarding of lucrative LGP subcontracts to BSH and while MARKO RUDI continued to have influence over BSH's receipt of payments from RTI.

## EXECUTION

15. On or about March 27, 2004, in the County of Durham, in the Middle District of North Carolina, and elsewhere, MARKO RUDI, for the purpose of executing the scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, did cause the

6

Case 1:07-cr-00412-UA *SEALED*   Document 1   Filed 11/26/2007   Page 6 of 11
Case 1:07-cr-00412-NCT   Document 3   Filed 02/07/08   Page 6 of 11

transmission of writings, signs, signals, pictures, and sounds, by means of wire communication in interstate and foreign commerce, that is, a wire transfer of approximately $255,000, from BSH to a Branch Banking and Trust Company account in the name of McGibney and Jordan PA, in Durham, North Carolina, for the purchase of 7 Birnham Lane, Durham, North Carolina, for the benefit of MARKO RUDI, with title to be held in the name of South Bay Partners LLC.

All in violation of Title 18, United States Code, Sections 1343, 1346 and 2.

## COUNT TWO

1. The Grand Jury realleges paragraphs one through fourteen of Count One, as if set forth fully herein.

2. On or about March 27, 2004, in the County of Durham, in the Middle District of North Carolina, MARKO RUDI did corruptly solicit, demand, accept, and agree to accept a thing of value from another person, that is, a wire transfer of approximately $255,000, from BSH to a Branch Banking and Trust Company account in the name of McGibney and Jordan PA, in Durham, North Carolina, for the purchase of 7 Birnham Lane, Durham, North Carolina, for the benefit of MARKO RUDI, with title to be held in the name of South Bay Partners LLC, intending to be influenced and rewarded in connection with a transaction and series of transactions of RTI involving $5,000 or more.

7

Case 1:07-cr-00412-UA *SEALED*   Document 1   Filed 11/26/2007   Page 7 of 11
Case 1:07-cr-00412-NCT   Document 3   Filed 02/07/08   Page 7 of 11

All in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

## COUNT THREE

1. The Grand Jury realleges paragraphs one through fourteen of Count One, as if set forth fully herein.

2. On or about March 29, 2004, in the County of Durham, in the Middle District of North Carolina, MARKO RUDI did knowingly execute and attempt to execute the scheme and artifice with intent to defraud the United States, by causing the purchase of 7 Birnham Lane, Durham, North Carolina, for the benefit of MARKO RUDI, with title held in the name of South Bay Partners LLC, using funds provided by BSH and related parties.

All in violation of Title 18, United States Code, Sections 1031 and 2.

## COUNT FOUR

1. At all times herein material, Branch Banking and Trust Company was a financial institution within the meaning of Title 18, United States Code, Section 1956(c)(6) and Title 31, United States Code, Section 5312(a)(2), that is, a bank, the deposits of which were insured by the Federal Deposit Insurance Corporation, and was engaged in interstate commerce and in activities which affected interstate commerce in any way and degree.

2. The Grand Jury realleges paragraphs one through fourteen of Count One, as if set forth fully herein.

8

Case 1:07-cr-00412-UA *SEALED*   Document 1   Filed 11/26/2007   Page 8 of 11
Case 1:07-cr-00412-NCT   Document 3   Filed 02/07/08   Page 8 of 11

3. On or about March 29, 2004, in the County of Durham, in the Middle District of North Carolina, MARKO RUDI did knowingly and willfully conduct and cause to be conducted a financial transaction involving Branch Banking and Trust Company, that is, the transfer and delivery of approximately $555,000, including funds provided by BSH and related parties, for the purchase of 7 Birnham Lane, Durham, North Carolina, for the benefit of MARKO RUDI, with title held in the name of South Bay Partners LLC, which involved proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Sections 1343, 1346 and 2, and bribery concerning programs receiving federal funds, in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2, with the intent to promote the carrying on of said specified unlawful activity and that while conducting and causing to be conducted such financial transaction knew that the property involved in the financial transaction, that is, funds in the amount of approximately $555,000, represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## COUNT FIVE

1. At all times herein material, Branch Banking and Trust Company was a financial institution within the meaning of Title 18, United States Code, Section 1956(c)(6) and Title 31, United States

9

Case 1:07-cr-00412-UA *SEALED* Document 1 Filed 11/26/2007 Page 9 of 11
Case 1:07-cr-00412-NCT Document 3 Filed 02/07/08 Page 9 of 11

Code, Section 5312(a)(2), that is, a bank, the deposits of which were insured by the Federal Deposit Insurance Corporation, and was engaged in interstate commerce and in activities which affected interstate commerce in any way and degree.

2. The Grand Jury realleges paragraphs one through fourteen of Count One, as if set forth fully herein.

3. On or about March 29, 2004, in the County of Durham, in the Middle District of North Carolina, MARKO RUDI did knowingly and willfully conduct and cause to be conducted a financial transaction involving Branch Banking and Trust Company, that is, the transfer and delivery of approximately $555,000, including funds provided by BSH and related parties, for the purchase of 7 Birnham Lane, Durham, North Carolina, for the benefit of MARKO RUDI, with title held in the name of South Bay Partners LLC, which involved proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Sections 1343, 1346 and 2, and bribery concerning programs receiving federal funds, in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and causing to be conducted such financial transaction knew that the property involved in the financial transaction, that is, funds in the amount of approximately

10

$555,000, represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

A TRUE BILL:


_____
FOREPERSON


_____
L. PATRICK AULD
ASSISTANT UNITED STATES ATTORNEY


_____
ANNA MILLS WAGONER
UNITED STATES ATTORNEY

11

Case 1:07-cr-00412-UA *SEALED*   Document 1   Filed 11/26/2007   Page 11 of 11
Case 1:07-cr-00412-NCT   Document 3   Filed 02/07/08   Page 11 of 11