1             IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

2

3  UNITED STATES OF AMERICA,      Criminal Action
                        No. 1:07CR412-1

4       Plaintiff,

5  vs.                  Greensboro, North Carolina
                        December 15, 2009

6  MARKO RUDI,

7       Defendant.

8  _____/

9

10              TRANSCRIPT OF MOTION PROCEEDINGS

11        BEFORE THE HONORABLE N. CARLTON TILLEY, JR.

12            UNITED STATES DISTRICT JUDGE

13  APPEARANCES:

14  For the Government:    ROBERT  HAMILTON, ESQUIRE
                      Assistant United States Attorney

15                      Post Office Box 1858
                      Greensboro, North Carolina 27402

16

17  For the Defendant:     CHRISTOPHER CLIFTON, ESQUIRE
                      Grace, Tisdale and Clifton

18                      301 North Main Street
                      Suite 1200

19                      Winston-Salem, North Carolina 27101

20

21  Court Reporter:        J. Calhoun, RPR
                      Room 101, U.S. Courthouse Building

22                      324 West Market Street
                      Greensboro, North Carolina 27401

23                      (336) 332-6033

24

25          Proceedings reported by stenotype reporter.
      Transcript produced by computer-aided transcription.

1          (Defendant is present.)

2          THE COURT:  Mr. Hamilton.

3          MR. HAMILTON:  May I call the next case, Your

4   Honor, United States versus Marko Rudi, 1:07CR412.  Your

5   Honor, we're here for purposes of a motion to withdraw.

6   Mr. Rudi is present, along with attorneys David Long and

7   Mr. Chris Clifton, Your Honor.

8          THE COURT:  Mr. Long, perhaps I should hear from

9   you first on this, your motion.  Mr. Rudi, you and

10  Mr. Clifton may be seated while I hear from Mr. Long.

11         MR. LONG:  Thank you, Your Honor.  Good morning.

12  I hate to be here.

13         THE COURT:  Well, we're glad to see you here.

14         MR. LONG:  I'm glad to see you here, but I'm not

15  happy to see you on this motion.

16         On September 28 -- I'm just going to give you a

17  little chronology.  I've got to be a neutral here to the

18  extent I can, but I just want to go through a summary of the

19  important dates, just so you will have that information.

20         THE COURT:  Okay.

21         MR. LONG:  Mr. Rudi, the first meeting I have

22  notes, I met with him September 28, 2005.  We had our first

23  engagement letter on November 14, 2005.  October 3, 2006,

24  there was an engagement letter prepared for my law firm to

25  RTI and two representatives of RTI who are here today in

1    court.  October 12th, 2006, RTI signed this engagement

2    letter with waiver language in it about continuing my

3    representation of Mr. Rudi.

4         I understand from Mr. Howard today, that they do

5    not contest that waiver.  October 16, 2006, I instituted a

6    screen, screening me from RTI and the attorneys who were

7    doing employment law work for RTI, so I screened myself and

8    my secretary from our employment law attorneys who were

9    dealing with RTI.  That screen has remained in effect

10   throughout, so I knew nothing about RTI, and the attorneys

11   representing RTI knew nothing about my involvement with

12   Mr. Rudi, other than the fact that the dual representation

13   existed.

14        November 20, 2009, my managing partner came to me

15   and indicated that there was some concern on the part of RTI

16   about my continued involvement in the representation of

17   Mr. Rudi.  The victim is RTI.  Mr. Rudi was an employee of

18   RTI at the time of the events that we'll be discussing in

19   this case.

20        At that time, I realized I had a material

21   limitation under Rule 1.7 of North Carolina Rule of

22   Professional Responsibility, in two respects:  Number one,

23   my ability to represent Mr. Rudi effectively, with RTI

24   having raised the concern as a client of my law firm.

25        Number two, I was concerned about my ability to

1  represent Mr. Rudi, adverse to RTI, when I could possibly be

2  more of a hinderance or a liability than an asset to him in

3  that representation.

4          I think on those two levels, I have a material

5  limitation on my ability to continue to represent Mr. Rudi,

6  and I'll be happy to answer any questions, but I think that

7  is the sum and substance of this motion.

8          THE COURT:  Thank you, sir.

9          Mr. Howard, do you wish to be heard?

10          MR. HOWARD:  Your Honor, thank you.  No, sir.  In

11  the month since I last seen you, I should be clear, I have

12  left the Government and have gone in-house at RTI, and been

13  working with Mr. Hamilton on this case, as representing the

14  victim in the matter.

15          THE COURT:  Thank you.

16          Mr. Clifton, do you wish to be heard?

17          MR. CLIFTON:  No, sir.

18          THE COURT:  Mr. Rudi, I'll be glad to hear

19  anything that you would like to say.

20          THE DEFENDANT:  Well, I guess all I wanted to say,

21  I'm opposing the withdrawal of Mr. Long.  I've engaged

22  Mr. Long four years ago.  I've invested time, money with

23  him.  This situation was known to RTI for four years, longer

24  than four years, so the so-called conflict surfaced only

25  given circumstances when RTI gained some information, so I'm

```
1   not sure why -- to be honest, I don't understand the
2   substance of the conflict and where it's coming from and
3   that's the reason why I was opposed to it.
4           THE COURT:  Anything else?
5           THE DEFENDANT:  No.  That's it.
6           THE COURT:  I do not know what financial
7   arrangements had been made.  I don't really think at this
8   point that's a concern of the Court.  That may be something
9   to be reconciled between the two of you.
10          MR. LONG:  Absolutely, Your Honor.  Absolutely.
11          THE COURT:  I do understand Mr. Long's assessment
12  of a conflict and material limitation.  I have been in
13  similar positions before as an attorney, and I think that is
14  a very reasonable assessment, and for that reason, I am
15  going to allow his motion to withdraw, especially
16  considering the fact that you have excellent attorneys in
17  place otherwise, so it's not leaving you unrepresented.
18          Anything further?
19          MR. LONG:  Nothing further for me, Your Honor.
20          THE COURT:  Thank you for being here.
21          MR. HAMILTON:  Your Honor, nothing further on this
22  motion, but since all of the parties are here, I was
23  wondering if I could discuss a scheduling matter.
24          THE COURT:  I'll certainly be glad to have you
25  state that.
```

1          MR. HAMILTON:  Your Honor, as you know, the

2    defense requested a continuance in this matter until the

3    April term, which was granted by Judge Shroeder, and we

4    agreed to that continuance.  Your Honor, since that time, my

5    case agent has contacted me.  He is now stationed overseas

6    in the Philippines.  He is expecting his first child in

7    early March, and he's been advised to seek medical treatment

8    in a country other than the Philippines, which has further

9    complicated his issue which might otherwise be complicated.

10   Your Honor, we would like to have him have time to have his

11   first child, spend some time with the child, and then also

12   arrive here perhaps -- or a little bit of time to help

13   prepare for trial, so we're fine with the April setting, but

14   we wanted to put the Court on notice that the Government

15   would request a setting either perhaps late in April or

16   early in May, just to make sure to accommodate the case

17   agent, who is stationed overseas.

18         THE COURT:  Mr. Clifton, do you have a response

19   with regard to that?  Would you like to speak to Mr. Rudi

20   about it before?

21         MR. CLIFTON:  Mr. Rudi and I have actually spoken

22   about this potential issue before today.  I thought that

23   discovery might try to push it back.  What I would say is,

24   we certainly don't want to impair the ability of this agent

25   to see his child born, but we hoped that we could come up

1 with a firm date, because Mr. Rudi has been in custody now

2 close to a year and a half. He's not eligible for bond in

3 the U.S. because he has no citizen status, which hurts him

4 even more.

5        If the Court would allow Mr. Hamilton to come up

6 with a firm date and offer that to the Court instead of

7 saying late April, early May.

8        THE COURT: How long will it take you to do that?

9        MR. HAMILTON: Not very long, Your Honor.

10        MR. CLIFTON: Long enough for me -- I would hope

11 by the end of this week. Long enough for me to look at my

12 schedule.

13        THE COURT: Why don't you let us know by the first

14 of next week.

15        MR. CLIFTON: Okay.

16        MR. HAMILTON: Thank you, Your Honor.

17        THE COURT: Thank you.

18        (This matter was concluded.)

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3          I, J. CALHOUN, RPR, United States District Court

 4    Reporter for the Middle District of North Carolina, DO

 5    HEREBY CERTIFY

 6

 7          That the foregoing is a true and correct transcript

 8    of the proceedings had in the within-entitled action; that

 9    I reported the same to typewriting through the use of

10    Computer-Aided Transcription.

11          THIS TRANSCRIPT CERTIFICATION IS VOID, IF THE

12    SIGNATURE IS NOT ORIGINALLY SIGNED BY THE COURT

13    REPORTER WHO REPORTED THIS MATTER.

14

15

16

17

18

19    Date:   9-14-10            J. Calhoun, RPR
                                 United States Court Reporter
20                               324 W. Market Street
                                 Greensboro, NC  27401
21

22

23

24

25
```