1    IN THE UNITED STATES DISTRICT COURT
      FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

2

3    UNITED STATES OF AMERICA,        Criminal Action
                                      No. 1:07CR412
4            Plaintiff,

5    vs.                              Greensboro, North Carolina
                                      March 18, 2010
6    MARKO RUDI,

7            Defendant.

8    _____/

9

10          TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS

11       BEFORE THE HONORABLE N. CARLTON TILLEY, JR.

12              UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14   For the Government:      ROBERT HAMILTON, ESQUIRE
                             Assistant United States Attorney
15                           Post Office Box 1858
                             Greensboro, North Carolina 27402
16

17   For the Defendant:      CHRISTOPHER CLIFTON, ESQUIRE
                             Grace, Tisdale & Clifton
18                           301 North Main Street
                             Suite 1200
19                           Winston-Salem, North Carolina 27101

20

     Court Reporter:         J. Calhoun, RPR
21                           Room 101, U.S. Courthouse Building
                             324 West Market Street
22                           Greensboro, North Carolina 27401
                             (336) 332-6033
23

24          Proceedings reported by stenotype reporter.
        Transcript produced by computer-aided transcription.
25

1           (Defendant is present.)

2           MR. HAMILTON:  First matter is United States

3   versus Marko Rudi,  1:07CR412-1, here for purposes of change

4   of plea, Your Honor.  He is represented by Mr. Clifton.

5           THE COURT:  How are you, Mr. Clifton?

6           MR CLIFFORD:  Good afternoon, Your Honor.

7           THE COURT:  Mr. Rudi, let me speak with you for

8   just a moment before I talk to Mr. Clifton.  I must ask a

9   series of questions of you and of Mr. Clifton before I

10  accept your plea of guilty.  I must first determine, before

11  accepting your plea of guilty, whether you understand the

12  charges, whether you understand what the Government would

13  have to do to prove your guilt, your right to plead not

14  guilty to the charges, the punishment that you could

15  receive, and then determine whether or not your decision to

16  plead guilty is one that's totally voluntary.

17          Now, first I'll ask Mr. Clifton some questions.

18  Listen very carefully, both to my questions and to his

19  responses.  If the information you would give were you

20  answering those questions is any different from that given

21  to me by Mr. Clifton, then tell me about that when you and I

22  talk.  You will placed under oath to answer the questions I

23  pose truthfully.  A false answer could result in your being

24  prosecuted for a separate offense known as perjury, so make

25  sure that your answers are truthful.  Make sure you

1  understand my questions.

2          If you have questions, the appropriate thing to do

3  is to ask.  If as we're going through this you really do not

4  wish to plead guilty, you really would rather have your case

5  heard by a jury, that would be fine, just simply let me know

6  that.

7          Every person has the right to plead not guilty to

8  every criminal charge, and the right to have the case heard

9  by a jury, so if that should be your decision, just simply

10 let us know that.  That's okay.

11         Do you have any questions about anything that I

12 just said?

13         THE DEFENDANT:  No, sir.

14         THE COURT:  Mr. Clifton, you've been representing

15 Mr. Rudi for how long?

16         MR. CLIFTON:  Over a year.

17         THE COURT:  And during that time, have you fully

18 explained the charges brought against him in this

19 indictment?

20         MR. CLIFTON:  Yes, sir.

21         THE COURT:  Do you believe he understands those

22 charges?

23         MR. CLIFTON:  I do.

24         THE COURT:  Have you fully investigated his case,

25 including the facts he's told you about, the case file in

1   the U.S. Attorneys Office, have you interviewed any

2   witnesses made necessary by your discussions with him, or

3   your review of the case file in the U.S. Attorneys Office,

4   and have you explained to him the punishment that he could

5   receive in this case?

6          MR. CLIFTON:  I have, Your Honor.

7          THE COURT:  And do you believe he understands the

8   charges and the evidence that you've discussed?

9          MR. CLIFTON:  Yes, sir.

10         THE COURT:  Do you believe he understands the

11  punishment that he could receive?

12         MR. CLIFTON:  Yes, sir.

13         THE COURT:  Have you discussed everything in the

14  plea agreement with him?

15         MR. CLIFTON:  Yes, sir.

16         THE COURT:  Do you believe he understands

17  everything in his plea agreement?

18         MR. CLIFTON:  I do.

19         THE COURT:  Do you have knowledge of anybody

20  threatening him in any way, trying to get him to enter a

21  plea of guilty?

22         MR. CLIFTON:  I do not.

23         THE COURT:  Or suggesting to him that if he pled

24  guilty, he would receive a lighter sentence than he would

25  receive if he went to trial and were found guilty by a jury?

1       MR. CLIFTON:  No, sir.

2       THE COURT:  Do you believe his decision to enter a

3  plea of guilty to the charge in Count Three, is totally

4  voluntary?

5       MR. CLIFTON:  I do.

6       THE COURT:  And consistent with the evidence in

7  the case?

8       MR. CLIFTON:  Yes, sir.

9       THE COURT:  Is that your recommendation to him and

10  to the Court, that it be accepted?

11       MR. CLIFTON:  That is my recommendation.

12       THE COURT:  Mr. Rudi, I see you're restrained, you

13  can't raise your hands far, but would you place your left

14  hand on the bible in front of you, and raise your right as

15  far as you're able to.

16       (Defendant was sworn.)

17       THE COURT:  Mr. Rudi, is Marko Rudi your true and

18  full name?

19       THE DEFENDANT:  Yes, sir.

20       THE COURT:  Just those two names?

21       THE DEFENDANT:  Yes, sir.

22       THE COURT:  How old are you, sir?

23       THE DEFENDANT:  Thirty-four.

24       THE COURT:  And you went how far in school?

25       THE DEFENDANT:  I'm sorry.

1    THE COURT:  How far in school did you go?

2    THE DEFENDANT:  Masters degree.

3    THE COURT:  If I ask anything that you're not sure

4    about, please understand that you may ask me to explain it

5    or repeat it.  You may talk to Mr. Clifton before you answer

6    any question.

7    First of all, did you agree with all of the

8    answers that Mr. Clifton just gave to me?

9    THE DEFENDANT:  Yes, sir.

10    THE COURT:  Do you believe you understand your

11    charges?

12    THE DEFENDANT:  Yes, sir.

13    THE COURT:  And do you understand the punishment

14    that you could receive?

15    THE DEFENDANT:  Yes, sir.

16    THE COURT:  You understand everything in your plea

17    agreement?

18    THE DEFENDANT:  Yes, sir.

19    THE COURT:  Nobody has threatened you in any way,

20    trying to get you to plead guilty?

21    THE DEFENDANT:  No, sir.

22    THE COURT:  Or indicated that if you pled guilty,

23    you would receive a lighter sentence than you would receive

24    if you went to trial and were found guilty by a jury?

25    THE DEFENDANT:  No, sir.

```
 1              THE COURT:  It is my understanding from looking at
 2    your plea agreement, that you are offering to plead guilty
 3    to the charge in Count Three of your indictment; is that
 4    correct?
 5              THE DEFENDANT:  That's correct, sir.
 6              THE COURT:  Do you understand that if I accept
 7    your plea of guilty, you can receive a term in prison of up
 8    to ten years, and a fine of up to a million dollars.
 9              Is that your understanding?
10              THE DEFENDANT:  Yes, sir.
11              THE COURT:  And that the fine could be more if the
12    loss to the Government in your case rises to more than that.
13              THE DEFENDANT:  I understand.
14              THE COURT:  Do you understand that you could be
15    required to pay any money back that the Government is out as
16    a result of any actions taken by you alleged in the case?
17              THE DEFENDANT:  Yes, sir.
18              THE COURT:  Any questions about that?
19              THE DEFENDANT:  No, sir.
20              THE COURT:  Do you understand that you would
21    receive a term of supervised release of probably three
22    years, in addition to any term of active imprisonment that
23    you receive?
24              THE DEFENDANT:  Yes, sir.
25              THE COURT:  The term supervised release refers to
```

1    a form of release when a person has served a term of active

2    imprisonment, that person is released coming out of prison

3    on what is known as supervised release.  The person is

4    supervised by a U.S. Probation Officer.  There are a number

5    of conditions that have to be followed.  The failure to

6    follow even one of those conditions, could result in the

7    person being brought back to court, and upon presentation to

8    the judge of just enough evidence to show that it's more

9    likely true than not that the person did violate a term of

10   supervised release, supervised release can be revoked, and

11   the person placed back in prison for up to the entire amount

12   of supervised release, up to an additional three years in

13   your case.

14          Is that your understanding?

15       *(Mr. Clifton and the Defendant  confer off the record.)*

16          MR. CLIFTON:  We've had discussion about -- he's a

17   foreign national, with no status in the United States.  I

18   explained to him if he stays in the U.S. he has to report

19   after he's released and that would still be in effect

20   afterwards.  That's what he was asking about.

21          THE COURT:  Okay.  You are a citizen of what

22   nation?

23          THE DEFENDANT:  Republic of Estonia.

24          THE COURT:  Should you be deported and not stay in

25   the United States, the special condition of release would be

```
 1    not to re-enter the United States without first getting

 2    permission to do so from the Secretary of Homeland Security.

 3    Entry into the United States without that permission, within

 4    the period of supervised release, could result in your being

 5    sent back to prison for up to three years, but if you're

 6    deported and ever come back, even in a hundred years, unless

 7    the law has changed, you would still need to get permission

 8    to do so or be subject to being prosecuted under another

 9    statute of the United States, which says once somebody has

10    been deported, they may not return without getting

11    permission.

12              Do you have questions about that?

13              THE DEFENDANT:  No, sir.

14              THE COURT:  Do you understand that before you

15    could be found guilty of the charge in your case, the

16    Government would have to prove that you, or a company you

17    worked for, had some contractual relation with the United

18    States, and that you had some scheme to defraud the United

19    States in some way as part of that contract or in the

20    execution of that contract.  It is alleged you took a

21    kickback or a bribe from somebody bidding for services for a

22    company for which you worked to enable that party to get a

23    job for which it would receive a rather sizable amount of

24    money from the United States, and that you understood what

25    it was that you were doing by asking for that or accepting
```

1   that, and that you acted with the knowledge that you were
2   not entitled to that, and that it would injure the United
3   States by accepting it.

4         Do you understand those things would have to be
5   proven before you could be found guilty?

6         THE DEFENDANT:  Yes, sir.

7         THE COURT:  Any questions about that?

8         THE DEFENDANT:  No, sir.

9         THE COURT:  Do you understand you have the right
10  to plead not guilty to that charge?

11        THE DEFENDANT:  I understand.

12        THE COURT:  And you could not be found guilty,
13  unless the Government could prove each of those elements
14  that I just mentioned beyond a reasonable doubt.

15        Is that your understanding?

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  And that you would have the right to
18  be represented by an attorney.  Mr. Clifton could examine
19  every witness the Government called in its effort to prove
20  those elements we discussed, could call witnesses on your
21  behalf.  If you couldn't afford to pay for those witnesses
22  to come here, then the Court would pay for their travel to
23  get here and witness fees while they are here, that you
24  would have the right to testify if you wish in your defense,
25  and if you did testify, the Court would explain to the jury

```
 1   it should consider your testimony by the same standards
 2   applied to any other witness, but if during the trial you
 3   did not wish to testify, you would have the right to elect
 4   not to testify, and nobody could make you be a witness, and
 5   that was your choice.
 6              The Court would explain to the jury that every
 7   defendant in a criminal case has the right not to testify,
 8   and the jury could not consider your election not to testify
 9   for any purpose during its decision, whether you should be
10   found guilty or not.
11              Do you have questions about that?
12              THE DEFENDANT:  No, sir.
13              THE COURT:  Do you have questions about any of the
14   rights I just discussed?
15              THE DEFENDANT:  No, sir.
16              THE COURT:  Do you understand that if you could
17   not afford to pay Mr. Clifton or another lawyer to represent
18   you, then the Court would appoint an attorney who would
19   represent you, and the Court would pay for it.
20              Is that your understanding?
21              THE DEFENDANT:  Yes, sir.
22              THE COURT:  I have been given a document entitled
23   factual basis, which sets out certain facts and allegations
24   pertaining to the charges against you.
25              Have you read that document?
```

```
 1            THE DEFENDANT:  Yes, sir.

 2            THE COURT:  Have you discussed it with

 3    Mr. Clifton?

 4            THE DEFENDANT:  Yes, sir.

 5            THE COURT:  You may talk with him, certainly,

 6    before answering this question, but my question to you is:

 7    Are the facts set out in that document accurate facts?

 8            THE DEFENDANT:  Not all of them.

 9            THE COURT:  Then, Mr. Clifton, would you point out

10    what is not.

11            MR. CLIFTON:  Yes, sir.  And I'll preview for the

12    Court, Mr. Hamilton and I arrived at this factual basis

13    together, and agree on almost everything in the report.  I

14    will tell you that on the last page, the last remaining

15    objection, and that is the last paragraph, that other

16    companies related to BSH wired additional funds to Durham,

17    we don't agree with the Government on that.  We sort of

18    agree to disagree.

19            We agree with the amount in the paragraph above

20    that, that figure in the loss amount, and we of course would

21    like to reserve our right to be heard as to loss in this

22    case, but that is our main objection to the factual basis

23    there.

24            THE COURT:  Do you agree with what Mr. Clifton has

25    just told me, Mr. Rudi?
```

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  Do you have objections to anything

3   else in the factual basis?

4        THE DEFENDANT:  No, sir.

5        THE COURT:  Mr. Hamilton, you are not agreeing

6   with what they are saying; is that correct?

7        MR. HAMILTON:  That's correct, Your Honor.

8        THE COURT:  So that will be a matter for the Court

9   to determine at sentencing?

10       MR. HAMILTON:  Yes, Your Honor.  It would not go

11  to the factual basis for plea, it would be a sentencing

12  issue.

13       MR. CLIFTON:  If I may, Your Honor, we have worked

14  consistently, probably 90 to 120 days with the victim

15  corporation.  Josh Howard is here representing them today.

16  I have been to his office.  We emailed back and forth.  I

17  hope that loss calculation will be resolved by then, but I

18  wanted to make sure that it was noted for the Court that

19  it's not yet, and if it's not, we would like to be heard on

20  that objection.

21       THE COURT:  Are you in agreement with what

22  Mr. Clifton has just said, Mr. Rudi?

23       THE DEFENDANT:  Yes, sir.

24       THE COURT:  Do you understand that even though the

25  statute says you could receive up to ten years, it will be

1   up to the Court to determine where between zero and ten

2   years you should be sentenced?  Do you understand that?

3           THE DEFENDANT:  I do.

4           THE COURT:  And that under the Federal Sentencing

5   Guidelines, your guideline range under the applicable

6   guidelines will first be determined.  One of the things that

7   will determine your guideline range is how much money is

8   involved, how much was the Government out, how much did you

9   gain improperly, and that would be one of the factors that

10   would go into the calculation of what your guideline range

11   will be.  There will be other factors that go into that, and

12   at this point, it is too early for anybody to be able to

13   accurately calculate exactly what your guideline range will

14   be.

15           Is that your understanding?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  And while the Court is required to

18   consider a person's guideline range once it is properly

19   calculated, the Court doesn't have to sentence somebody

20   within that guideline range.  Sometimes there are facts or

21   circumstances that would allow what is known as a departure

22   under the guidelines, either above or below, but even if

23   there are not, the Court still has the authority, in

24   considering the law that applies in every case when the

25   Court sentences somebody, 18 United States Code, Section

3553(a), provides several things for the Judge to consider
in every sentencing proceeding, so it is possible in
considering those factors, that the Court may elect to vary
above or below your guideline range.

Is that also your understanding?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have questions about that?

THE DEFENDANT: No, sir.

THE COURT: But you do understand that we cannot
correctly calculate today what your guideline range will be?

THE DEFENDANT: Yes, sir.

THE COURT: And that even though you and
Mr. Clifton may have talked together and spent considerable
time trying to determine what it is, that there is no way
now he can do that with any accuracy. You do understand
that?

THE DEFENDANT: I do understand.

THE COURT: Any questions about that?

THE DEFENDANT: No, sir.

THE COURT: Are you pleading guilty because you
are in fact guilty of that charge?

THE DEFENDANT: Yes, sir.

THE COURT: On page four of your plea agreement,
Paragraph 5B, there is language to the effect that the U.S.
Attorneys Office may recommend to the Court, as your

1  sentencing guidelines are being calculated, that you receive

2  credit for what is known as acceptance of responsibility;

3  perhaps of two levels, perhaps of three levels, but even if

4  the U.S. Attorneys Office does make that recommendation, the

5  Court doesn't have to follow that recommendation.  I'm not

6  telling you I would not, I'm saying the law does not require

7  me to.

8          Is that your understanding?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  Do you have questions about that?

11         THE DEFENDANT:  No, sir.

12         THE COURT:  Also in Paragraph 5C immediately below

13  that, there is language to the effect that once your

14  guideline range is calculated, the United States will

15  recommend to the Court, that you receive a sentence at the

16  low end of that range.

17         Do you understand the Court does not have to

18  follow that recommendation?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  And you understand that if the Court

21  does not follow either that recommendation or the

22  recommendation that you receive acceptance of

23  responsibility, you would not be entitled to withdraw your

24  plea of guilty?

25         THE DEFENDANT:  I understand, sir.

1          THE COURT:  Do you understand that once I have

2  accepted your plea of guilty, it is highly unlikely that the

3  law would ever allow you to withdraw that plea of guilty?

4          THE DEFENDANT:  I understand that, sir.

5          THE COURT:  Do you have questions about anything

6  that we've talked about today?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  Anything in your plea agreement that

9  you have questions about?

10         THE DEFENDANT:  No, sir.

11         THE COURT:  I think when we were talking about the

12 punishment that you could receive and I discussed

13 restitution with you, I talked about paying money back to

14 the United States.  You understand you could be ordered to

15 pay money back to any victim?

16         THE DEFENDANT:  I understand.

17         THE COURT:  Do you have any questions before I

18 accept your plea of guilty?

19         THE DEFENDANT:  No, sir.

20         THE COURT:  And you still wish for me to accept

21 your plea of guilty?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  The Court finds that Mr. Rudi's plea

24 of guilty to the charge in Count Three is knowingly and

25 voluntarily entered, and that there is a factual basis to

1   support his plea of guilty.

2           We will set sentencing for September the 16th in

3   this courtroom, at 9:30 in the morning.  A presentence

4   report will be done in your case.  That basically is a

5   thorough history of you and many things about you.  The

6   probation officer who does that will be the first person to

7   make an official calculation of your guideline range.  It is

8   very important to get those facts correct, so please do

9   cooperate with that probation officer.  Once a draft is made

10  of the report, it will be sent to Mr. Clifton.  He will go

11  over it with you.

12          If you feel some error has been made, either in

13  the facts or in the application of the guidelines to the

14  facts, then he will work with the probation officer and the

15  Government's lawyer trying to iron that out.  If it can't be

16  ironed out, he may file a legal brief with the Court, called

17  a position paper, so the Court can make that determination,

18  but please do cooperate.

19          THE DEFENDANT:  Will do.

20          MR CLIFFORD:  If I may, Your Honor, he's been in

21  custody 20 months at this point, and we're going to work

22  with the Government on the offense conduct and provide it

23  for probation.  If that report is done before that, I would

24  just ask to move before that --

25          THE COURT:  If the report is done and we can work

```
1   it in before then, sure.
2             THE COURT:  Anything further, Mr. Clifton,
3   Mr. Hamilton?
4             MR. HAMILTON:  No, sir.
5             MR. CLIFTON:  No, sir.
6             (This matter was concluded.)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                    C E R T I F I C A T E
```

        I, J. CALHOUN, RPR, United States District Court

Reporter for the Middle District of North Carolina, DO

HEREBY CERTIFY


        That the foregoing is a true and correct transcript

of the proceedings had in the within-entitled action; that

I reported the same to typewriting through the use of

Computer-Aided Transcription.

        THIS TRANSCRIPT CERTIFICATION IS VOID, IF THE

SIGNATURE IS NOT ORIGINALLY SIGNED BY THE COURT

REPORTER WHO REPORTED THIS MATTER.

Date:    9-14-10            J. Calhoun, RPR
                            United States Court Reporter
                            324 W. Market Street
                            Greensboro, NC  27401