**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 10-4736

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

  v.

MARKO RUDI,

    Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  N. Carlton Tilley, Jr., Senior District Judge. (1:07-cr-00412-NCT-1)

Argued:  October 25, 2011    Decided:  November 8, 2011

Before MOTZ, KING, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Jenifer Wicks, Washington, D.C., for Appellant.  Robert Michael Hamilton, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.  **ON BRIEF:** John W. Stone, Jr., Acting United States Attorney, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Estonia extradited Marko Rudi to the United States to face charges in federal court for a fraud scheme in which he attempted to obtain kickbacks in return for awarding United States government contracts in Iraq.  Rudi pled guilty to one count of major fraud against the United States in exchange for the dismissal of a second wire fraud charge and recommendation of a sentence at the low end of the applicable guideline range.  On appeal, Rudi contends that the Government obtained his conviction in violation of the Estonian extradition order and did not fulfill its obligations under the plea agreement; he also maintains that the district court abused its discretion in sentencing him.  We affirm.

I.

On November 26, 2007, a federal grand jury issued a five count indictment charging Rudi with wire fraud and deprivation of honest services, in violation of 18 U.S.C. §§ 1343, 1346; bribery, in violation of 18 U.S.C. § 666(a)(1)(B); major fraud against the United States, in violation of 18 U.S.C. § 1031; money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and concealment of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

Research Triangle Institute International, Inc. ("RTI"), a company that has managed approximately one billion dollars in contracts for the United States Agency for International Development ("USAID"), had employed Rudi. Around April 2003, while working at RTI, Rudi was responsible for supervising a USAID contract in Iraq known as the Local Governance Project. Instead of obtaining competitive bids from providers, Rudi attempted to obtain kickbacks from two bidders, SMitTeq LLC and Business Systems House FZ-LLC ("BSH"), in exchange for awarding a contract. After the contract was awarded to it, BSH wired approximately $255,000 to an attorney in Durham for the purchase of a house at 7 Birnham Lane, Durham, N.C. The home was purchased in the name of a shell corporation, Southbay Partners, but Rudi and his family occupied the house.

At the time of his indictment, Rudi lived in his native country of Estonia. On September 17, 2008, the United States formally requested that Estonia extradite Rudi based on the pending indictment. On December 12, 2008, the Estonian Ministry of Justice ordered the extradition of Rudi on the two fraud charges, but refused to extradite him for the charges of bribery and money laundering. Following his arraignment, Rudi moved to dismiss the bribery and money laundering charges based on Estonia's refusal to extradite him on those grounds. The United

States ultimately consented to the dismissal of those charges, and the charges were dropped.

On March 18, 2010, Rudi pled guilty to one count of major fraud against the United States pursuant to a plea agreement. The agreement provided, inter alia, that the remaining wire fraud charge would be dismissed and that "the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable advisory guideline range."

At sentencing, the district court determined the applicable advisory range to be 24-30 months imprisonment. When the court asked for the Government's recommendation, the prosecutor replied "in the plea agreement the Government recommended to the Court a sentence at the lowest end of guidelines." Nevertheless, the district court determined that an upward variance was appropriate and sentenced Rudi to 33 months of confinement, 3 years of supervised release, and a $150,000 fine. Rudi noted this timely appeal.

II.

Rudi first contends that his conviction was obtained in violation of the Estonian extradition order and therefore violates the rule of specialty. He argues that his conviction for major fraud against the United States was dependent on facts

4

that showed that he accepted a bribe from BSH, and Estonia explicitly refused to extradite Rudi on the charge of bribery.

The rule of specialty prohibits a requesting nation from prosecuting an extradited individual for offenses other than those on which the surrendering nation agreed to extradite. See United States v. Rauscher, 119 U.S. 407, 418-19 (1886); United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992). The rule of specialty finds root in many of the reciprocal extradition treaties of the United States. In the case of Estonia, the treaty provides that "[n]o person shall be tried for any crime or offense other than that for which he was surrendered." Treaty Between the United States and Esthonia for Extradition of Fugitives from Justice art. IV, U.S.-Est., Nov. 8, 1923, 43 Stat. 1849.

Assuming, without deciding, that Rudi has standing to raise the issue of a violation of the rule of specialty, we hold that Rudi has waived his right to appeal the issue by failing to raise the argument in the district court. See Davis, 954 F.2d at 186-87. The rule of specialty is equivalent to a limit on personal jurisdiction over the defendant, and so is subject to waiver if not raised in a timely manner. See Fed. R. Crim. P. 12(b)(3), (e); United States v. Marquez, 594 F.3d 855, 858 (11th Cir. 2010); United States v. Anderson, 472 F.3d 662, 668 (9th Cir. 2006); United States v. Yousef, 327 F.3d 56, 115 (2d Cir.

5

2003); United States v. Vreeken, 803 F.2d 1085, 1088-89 (10th Cir. 1986). In the district court, rather than contending that the rule of specialty barred prosecution on the major fraud count, Rudi pled guilty to the charge. His total failure to raise the rule of specialty objection with respect to the major fraud count in the district court waives his reliance on the specialty doctrine before us.

Rule 12(e) does provide that a court may grant relief from such a waiver upon a showing of "good cause." Fed. R. Crim. P. 12(e). However, Rudi has provided no reason for his failure to raise the argument before the district court. Given that he moved to dismiss the bribery and money laundering claims as violating the rule of specialty, he clearly understood his right to rely on the rule of specialty but failed to do so with respect to the major fraud charge.[1]

Rudi's contention that his claim presents a "structural" defect that cannot be waived fails in light of our holding in Davis. Considering a nearly identical argument, we there held:

> Because courts construe international treaties as equivalent in supremacy to validly enacted federal law, the principle of specialty articulated by the

---

[1] Rudi also contends that he cannot waive the rule of specialty because the doctrine is a right of Estonia. Regardless of whether Estonia continues to maintain a right to invoke the doctrine of specialty, Rudi waived his right to invoke the doctrine. See Davis, 954 F.2d at 186-87; Vreeken, 803 F.2d at 1088-89.

6

> . . . Extradition Treaty must be considered no more than a statutorily created right. Protection of this right does not rise to the level of fundamentality that this court has traditionally demanded before addressing a question of law not argued at the district court level.

954 F.2d at 187. Therefore, Rudi has waived his rule of specialty contention.

### III.

Next, Rudi contends that the Government violated its obligation in the plea agreement to recommend a sentence at the low end of the applicable advisory guidelines range. In particular, Rudi argues that the Government ought to have "advocated" for a sentence at the low end of the guidelines range instead of "merely stat[ing] the condition of the plea agreement." We conclude that the Government fulfilled its obligations.[2]

The plea agreement provides, in relevant part: "the United States agrees that, once the Court has determined the applicable

---

[2] The parties dispute the proper standard of review. The Government contends that Rudi "did not claim the plea agreement was breached or attempt to withdraw his guilty plea" in the district court, and therefore we should review only for plain error. Rudi contends that he preserved the argument, citing trial counsel's statement that the Government must "advocate" for the low end of the guidelines, and so we should apply the more forgiving clear error standard of review. We need not decide which standard of review applies because even applying the more generous standard, Rudi cannot prevail.

7

advisory guideline range, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable advisory guideline range." When the district court asked for the Government's recommended sentence, the following colloquy ensued:

> THE COURT: Mr. Hamilton, you are recommending the 24 months?
> MR. HAMILTON: Your Honor, in the plea agreement the Government recommended to the Court a sentence at the lowest end of guidelines.
> THE COURT: I think that's all you can say.
> MR. HAMILTON: Yes, sir.

The prosecutor's recommendation was also included in the presentence report, which indicates that "the government will recommend that the defendant be sentenced at the low end of the guideline range."

Rudi received exactly the benefit promised in the plea agreement: that the Government recommend that he receive a sentence at the low end of the applicable guideline range. "[I]n enforcing plea agreements, the government is held only to those promises that it actually made to the defendant." United States v. Peglera, 33 F.3d 412, 413 (4th Cir. 1994). Unless the Government binds itself to "enthusiastically" recommending a sentence, the Government is not obligated to do more than state its recommended sentence. United States v. Benchimol, 471 U.S. 453, 455 (1985). Here, the Government promised to recommend a

8

low end sentence, and did so.  Therefore, the Government did not violate the plea agreement.

Rudi points to United States v. Brown, 500 F.2d 375 (4th Cir. 1974), and United States v. Grandinetti, 564 F.2d 723 (5th Cir. 1977), to support his contention that the Government must do more than state its recommendation.  But, in both of those cases, unlike the case at hand, the prosecutor made remarks at the sentencing hearing expressing reservations about the plea agreement or arguing against the agreement entirely.  Here, the Government did not undermine its recommendation to the court, and therefore, it met its obligation under the agreement.

IV.

Lastly, Rudi challenges his sentence on several grounds. This court reviews the reasonableness of a sentence under a "deferential abuse-of-discretion standard."  Gall v. United States, 552 U.S. 38, 41 (2007).

Rudi primarily contends that the district court did not consider the 18 U.S.C. § 3572(a) factors in imposing a fine of $150,000.  We disagree.  The court considered the factors and attempted both to tailor the fine to the crime at hand and to address Rudi's arguments.  The court noted the severity of the crime, the gain to Rudi, and the loss to the victims.  When Rudi objected to the fine, the district court further noted that "he

9

is well educated. He has a masters degree in accounting. He has experience in accounting, and is obviously an extremely bright person." Moreover, the district court ordered payment of the fine in the form of small $150 monthly installments and instructed Rudi that if he was unable to pay that amount, he could bring it to the court's attention following his release. We therefore find that the district court did not abuse its discretion in imposing a $150,000 fine.

Rudi also contends that the district court erred in sentencing him to incarceration for 33 months. We find that there was no significant procedural error and that the sentence was substantively reasonable. See United States v. Evans, 526 F.3d 155, 161 (4th Cir. 2008). The court based its sentence on the fact that (1) Rudi's crime was an "awful fraud" that took advantage of taxpayer dollars; (2) Rudi had taken steps to conceal his fraud; (3) Rudi may have tried to receive kickbacks from other companies; and (4) there was a need for deterrence. Moreover, the 33 month term of incarceration was only a small variance from the 24-30 month advisory range. The district court thus adequately considered the factors in 18 U.S.C. § 3553(a) and did not abuse its discretion in imposing the 33 month sentence.

Finally, Rudi claims that the district court improperly relied on his national origin and immigration status in

10

sentencing. We cannot agree. Of course, "sentences imposed on the basis of impermissible considerations, such as a defendant's race or national origin, violate due process." United States v. Bakker, 925 F.2d 728, 740 (4th Cir. 1991) (internal citations omitted); see also United States v. Onwuemene, 933 F.2d 650, 651 (8th Cir. 1991); United States v. Borrero-Isaza, 887 F.2d 1349, 1355 (9th Cir. 1989); U.S.S.G. § 5H1.10 ("Race . . . [and n]ational [o]rigin . . . are not relevant in the determination of a sentence."). However, there is no indication that the district court relied on Rudi's national origin in imposing the sentence. Rudi relies entirely on one statement -- "Mr. Rudi came to this country" -- that the court made in describing Rudi's personal and education background, factors that are properly considered under 18 U.S.C. § 3553(a)(1). The court made no disparaging remarks about Rudi's alienage and made no statement suggesting that it was relying on Rudi's national origin in imposing the sentence. We are unable to find that the district court impermissibly based the sentence on national origin.

V.

For the foregoing reasons, the judgment of the district court is in all respects

AFFIRMED.

11